IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| First National Insurance Company of America, | ) ) ) |
| Plaintiff, | C.A. 6:22-cv-01685-DCC ) ) ) |
| v. | ) **OPINION AND ORDER** ) |
| The Estate of Louis Mangieri, by and through Gesine Mangieri, as Personal Representative, and Jason Scott Rodgers, | ) ) ) ) ) |
| Defendants. | ) ) ) |

This matter is before the Court on Plaintiff's Motion for Summary Judgment. ECF No. 21. Defendant the Estate of Louis Mangieri by and through its Personal Representative Gesine Mangieri ("Defendant Estate") filed a Response in Opposition, which included a Request for Certification to the Supreme Court of South Carolina, and Plaintiff filed a Reply. ECF Nos. 22, 23. Defendant Estate also filed a Motion to Supplement Its Reply Memorandum to Plaintiff's Motion for Summary Judgment. ECF No. 28. Plaintiff filed a Response in Opposition, and Defendant Estate filed a Reply. ECF Nos. 30, 31. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is granted, Defendant Estate's Request for Certification is denied, and Defendant's Motion to Supplement is denied.

## BACKGROUND

This case arises from an accident that occurred at a QT gas station located at 200 Harrison Bridge Road, Simpsonville, South Carolina. ECF Nos. 1 at 3; 22-1 at 1. On

November 28, 2021, Louis Mangieri ("Mangieri") visited the gas station. ECF No. 1 at 3. Mangieri parked his vehicle, a 2017 Toyota, at a gas pump and placed a gas nozzle into the gas tank opening. *See* ECF Nos. 22-1 at 3; 22-2 at 2; 22-4 at 6–7. Leaving the gas nozzle in the gas tank of his vehicle, Mangieri walked toward the gas station storefront, when a truck owned by Jason Scott Rodgers ("Rodgers") struck him, resulting in Mangieri's death at the scene. ECF Nos. 1 at 3; 22-5 at 2–3. Mangieri had not yet gassed his vehicle and was some distance—allegedly approximately 19 to 20 steps—away from his vehicle when struck. ECF Nos. 1 at 3; 22-5 at 3. Plaintiff issued insurance coverage to Mangieri for two vehicles, a 2017 Toyota and a 2019 Honda, under policy number F3051985 (the "Policy") with a period of December 8, 2020, to December 8, 2021. ECF No. 1 at 2. The Policy provided underinsured motorist ("UIM") coverage of $100,000 per person for bodily injury coverage and $50,000 per occurrence for property damage. ECF No. 21-1 at 6. The Policy states, in part, that:

> A. We will pay damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of:
>
> 1. Bodily injury sustained by that insured and caused by an accident; and
>
> 2. Property damage caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.

*Id.* at 35. The Policy further provides that:

> B. If bodily injury or property damage is sustained in an accident by you, any family member, or a rated driver while not occupying any auto:

1. Our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of bodily injury sustained by any one person in that accident is the limit of liability shown in your Policy Declarations for "each person" for Bodily Injury Liability Uninsured Motorists Coverage applicable to any one of your covered autos.

2. Subject to this limit for "each person", our maximum limit of liability for all damages arising out of bodily injury sustained in that accident is the limit of liability shown in your Policy Declarations for "each accident" for Bodily Injury Liability Uninsured Motorists Coverage applicable to any one of your covered autos.

3. Our maximum limit of liability for all property damage resulting from that accident is the limit of liability shown in your Policy Declarations for "each accident" for Property Damage Liability Uninsured Motorists Coverage applicable to any one of your covered autos.

*Id.* at 21.  The Policy defines "occupying" as "in; upon; or getting in, on, out or off."  *Id.* at 10.  At the time of the accident, the Policy was in effect.  ECF No. 1 at 3.  Plaintiff tendered to Mangieri $100,000 for the bodily injury coverage under the Policy and $50,000 for the property damage coverage under the Policy specifically for the vehicle Mangieri drove on the day of the accident.  ECF No. 21-2 at 2.

On May 27, 2022, Plaintiff filed a Complaint seeking declaratory judgment that it is not obligated to pay the stacked bodily injury and property damage limits for Mangieri's other vehicle covered under the Policy.  ECF No. 1 at 5–6.  On July 8, 2022, Defendant Rodgers filed an Answer, and on July 18, 2022, Defendant Estate filed an Answer, asserting a counterclaim for declaratory judgment that Defendant Estate is entitled to all UIM bodily injury and all UIM property damage coverage under the Policy.  ECF Nos. 12; 14 at 7. Plaintiff filed an Answer to Defendant Estate's counterclaim on July 19, 2022.

3

ECF No. 15.  On May 15, 2023, Plaintiff filed a Motion for Summary Judgment.  ECF No. 21.  On May 30, 2023, Defendant Estate filed a Response in Opposition, which includes a Request for Certification to the Supreme Court of South Carolina on the question of "occupying," and on June 5, 2023, Plaintiff filed a Reply.  ECF Nos. 22, 23.  On June 19, 2023, Defendant Estate filed a Motion to Supplement Its Reply Memorandum to Plaintiff's Motion for Summary Judgment with a transcript of oral argument heard before the Supreme Court of South Carolina in an unrelated case.  ECF No. 28.  On June 21, 2023, Plaintiff filed a Response in Opposition, and on June 28, 2023, Defendant Estate filed a Reply.  ECF Nos. 30, 31.  On November 27, 2023, the Court held a hearing with respect to Plaintiff's Motion for Summary Judgment.  ECF No. 37.  As an initial matter, the Court denies Defendant Estate's Motion to Supplement.  After review, the transcript is not persuasive authority nor does it add to the Court's understanding or analysis of the facts and law applicable to this matter.  Accordingly, the Court proceeds to the merits of Plaintiff's Motion for Summary Judgment and Request for Certification.

## **APPLICABLE LAW**

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(a) states, as to a party who has moved for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the

4

evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made

5

>for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce evidence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

***Request for Certification***

Federal courts in diversity cases apply the law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In situations in which "there is no case law from the forum state which is directly on point, the district court attempts to do as the state court would do if confronted with the same fact pattern."  *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (internal citations omitted).  The Fourth Circuit Court of Appeals has noted that "[o]nly if the available state law is clearly insufficient should the court certify the issue to the state court."  *Id.* (citing *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir. 1984)).

South Carolina Appellate Court Rule 244 provides that the Supreme Court of South Carolina

>in its discretion may answer questions of law certified to it by any federal court of the United States . . . when requested by the certifying court if there are involved in any proceeding before that court questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

Rule 244(a), SCACR.  The certification order shall set forth: (1) "the questions of law to be answered"; (2) "all findings of fact relevant to the questions certified"; and (3) "a statement showing fully the nature of the controversy in which the questions arose."  Rule 244(b), SCACR.

## DISCUSSION

Plaintiff contends that it is entitled to summary judgment on its claim seeking declaratory judgment that it is not obligated to pay the stacked bodily injury and property damage limits for Mangieri's other vehicle covered under the Policy.  ECF No. 21 at 4.  Plaintiff contends that Mangieri cannot stack his UIM coverage because the covered vehicle was not involved in an accident.  *Id.* at 6.  Plaintiff argues that it is undisputed that on November 28, 2021, a vehicle owned by Rodgers struck Mangieri, killing him on impact, and that no contact with Mangieri's vehicle occurred.  *Id.*  Plaintiff further argues that Mangieri was not "occupying" his vehicle when the accident occurred and relies on the fact that Mangieri was approximately 18 to 20 steps[1] from his vehicle when the accident occurred.  *Id.*  In addition, Plaintiff, in part, relies on two unpublished Fourth Circuit decisions in which the court held that an individual struck by a vehicle while returning to a vehicle was not permitted to stack UIM coverage under the terms of the policies.  *Id.* at 6–7 (citing *Mims v. USAA Cas. Ins. Co.*, No. 21-1654, 2023 WL 2583689,

---

[1] In Plaintiff's Motion for Summary Judgment, Plaintiff contends that Mangieri was approximately 18 to 20 steps from his vehicle when the accident occurred.  ECF No. 21 at 4.  However, given that the Complaint alleges that Mangieri was approximately 19 to 20 steps from his vehicle when the accident occurred, ECF No. 1 at 3, the Court will incorporate the number of steps alleged in the Complaint throughout.

at *2 (4th Cir. Mar. 21, 2023) (per curiam); *Cramer v. Nat'l Cas. Co.*, 690 F. App'x 135, 139–40 (4th Cir. 2017)).[2]

In contrast, Defendant Estate contends that it is entitled to declaratory judgment that it is permitted to stack the UIM coverage for the second vehicle onto the UIM coverage for the vehicle Mangieri drove on the day of the accident, i.e., the 2017 Toyota. ECF No. 22 at 6.  Defendant Estate asserts that "occupying" as defined in the Policy is ambiguous and, therefore, must be construed in favor of the insured. *Id.* at 9.  Defendant Estate argues that "occupying" includes both "getting off" and being "off" a vehicle. *Id.* at 11.  Defendant Estate relies, in part, on the definition of "occupying" in the Policy ("in; upon; or getting, in, on, out or off"). *Id.*; ECF No. 21-1 at 10.  Defendant Estate argues that because "occupying" as defined in the Policy fails to include a comma after "out" and includes "or[,]" the definition encompasses both "getting off" and being "off" a vehicle. *Id.*  Moreover, Defendant Estate argues that because the Policy contains a provision that an injured person's damages must "arise out of the ownership, maintenance, or use of the 'underinsured motor vehicle[,]'" the provision includes Mangieri.  ECF Nos. 21-1 at 35; 22 at 11.  Defendant Estate contends that Mangieri was "using" and "maintaining" the vehicle as set forth in the Policy at the time of the accident because "he was in the process of gassing his vehicle, and was continuing in the process of gassing his vehicle, when he was struck and killed."  ECF No. 22 at 11.  Further, Defendant Estate contends that Mangieri walked towards the gas station storefront because he "experienced an issue or problem with the gas pump." *Id.* at 1.

---

[2] In the above cases, the Fourth Circuit interpreted South Carolina law.

Defendant Estate contends that Mangieri occupied his vehicle when the accident occurred because South Carolina case law provides for a liberal definition of "occupying." *Id.* at 12 (citing *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 730 S.E.2d 862, 868 (S.C. 2012)).  Defendant Estate contends that South Carolina law does not require physical contact for an individual to "occupy" a vehicle but concedes that "a point arises when the injured party's connection to the covered vehicle is severed such that he is no longer 'occupying' it."  *Id.* at 15.  Defendant Estate argues that, to the extent Plaintiff relies on unpublished Fourth Circuit decisions in its Motion, the Court should not consider the decisions because they are not binding on this Court.  *Id.* at 3, 17.  Lastly, Defendant Estate requests that this Court certify the question of "occupying" to the Supreme Court of South Carolina because there is no case entirely on point with the facts of the present case.  *Id.* at 19–20.

Plaintiff contends that *Kennedy* is distinguishable from the present case.  ECF No. 23 at 3.  Plaintiff contends that "occupying" is not ambiguous and that Defendant Estate is therefore not entitled to any favorable contract interpretation.  ECF No. 23 at 3–4.  Plaintiff argues that Defendant Estate cannot stack UIM coverage because Mangieri's vehicle was not involved in an accident; Rodgers's vehicle did not contact Mangieri's vehicle, nor did Mangieri's vehicle contact Rodgers's vehicle.  *Id.* at 4.  Plaintiff also argues that Defendant Estate's Request for Certification should be denied because the law is sufficient to resolve the present case.  *Id.* at 7.

Having reviewed the applicable law and the arguments and submissions of the parties, the Court finds that Plaintiff is entitled to summary judgment.  S.C. Code Ann.

9

§ 38-77-160 does not allow insureds to stack UIM coverage as a result of the accident at issue in this case. *Id.* S.C. Code Ann. § 38-77-160 provides, in part, that:

> If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage.

*Id.* "Thus, an insured cannot stack UIM coverage limits unless the insured has a vehicle involved in the accident." *Mims v. USAA Cas. Ins. Co.*, C.A. 4:19-cv-00765-JD, 2021 WL 2391382, at *2 (D.S.C. Feb. 21, 2021), *aff'd by Mims*, 2023 WL 2583689 (citation omitted). For an insured to have a vehicle "involved in the accident" in accordance with S.C. Code Ann. § 38-77-160 for stacking purposes, the accident in question must have an effect on the vehicle. *Merck v. Nationwide Mut. Ins. Co.*, 455 S.E.2d 697, 698 (S.C. 1995).

Here, the insured vehicle was not involved in the accident. As stated in the Crime Scene Investigation Report:

> The [reporting officer] . . . observed the victim walking from [his] vehicle . . . across the parking lot towards the QT. As [Rodgers's] vehicle . . . came across the left corner at the front of the store, [Rodgers's] vehicle . . . struck the victim and the victim fell to the ground.

ECF No. 22-2 at 3. Neither party disputes the Crime Scene Investigation Report's descriptions of events prior to the accident. *See* ECF No. 21 at 2 (stating that "Mangieri . . . was walking toward the front door of the QT, when he was struck by a truck"); *see also* ECF No. 22 at 4 (stating that "[w]hile walking the short distance from the gas pump to the store, Mangieri was struck by a . . . truck"). The accident had no effect on Mangieri's vehicle because Mangieri was some distance away—approximately 19 to 20 steps—

when the accident occurred.  ECF No. 1 at 3.  Accordingly, Defendant Estate is not allowed to stack coverage under S.C. Code Ann. § 38-77-160.

With respect to the definition of "occupying" contained in the Policy, while it is true that in South Carolina "ambiguous terms [in an insurance policy] are to be construed liberally in favor of the insured," *Hutchinson v. Liberty Life Ins. Co.*, 743 S.E.2d 827, 829 (S.C. 2013), such a rule of construction does not apply when "there is no ambiguity in the language of the insurance contract and there is only one reasonable interpretation which that language can fairly be accorded[,]" *Long v. Adams*, 312 S.E.2d 262, 265 (S.C. Ct. App. 1984).

Here, Mangieri failed to "occupy" his vehicle when the accident occurred. Defendant Estate is not entitled to favorable contract interpretation because "occupying" as defined in the Policy is unambiguous.  *See Long*, 312 S.E.2d at 265.  The Policy defines "occupying" as "in; upon; or getting in, on, out or off."  ECF No. 1-1 at 10. Defendant Estate contends that "occupying" can be interpreted as either "getting off" or being "off" a vehicle, but such an argument ignores the inclusion of a semi-colon preceding "or getting[,]" which indicates that "in, on, out or off" modify "getting" and do not constitute standalone terms.  The question at present is whether Mangieri's act of walking towards the gas station storefront constitutes "getting off" his vehicle.  It is undisputed that Mangieri was some distance away from his vehicle when the accident occurred.[3]  ECF

---

[3] Plaintiff contends that Mangieri was approximately 19 to 20 steps from his vehicle when the accident occurred.  ECF No. 1 at 3.  Defendant Estate does not directly refute the distance but alleges that Mangieri was "some distance" from his vehicle when the accident occurred.  ECF No. 22 at 2.  Further, Defendant Estate contends that Mangieri walked towards the gas state storefront after "experience[ing] an issue or problem with the gas pump."  *Id.* at 1.  Mangieri's decision to walk towards the gas state storefront is

11

Nos. 1 at 3; 21 at 2; 22 at 1.  Defendant Estate argues that Mangieri was getting off his vehicle when the accident occurred because he "was still in the process of gassing his vehicle, and was actually moving in the furtherance of the process of gassing his vehicle[.]"  ECF No. 22 at 17–18.  While Defendant Estate is correct that unpublished Fourth Circuit decisions are not binding on this Court, *see Hupman v. Cook*, 640 F.2d 497, 500 (4th Cir. 1981) ("[Unpublished opinions] are entitled only to the weight they generate by the persuasiveness of their reasoning."), they may be persuasive, and the Court finds *Mims* to be analogous to the present case.

In *Mims*, the Fourth Circuit Court of Appeals upheld a district court decision, where the district court found that an insured who was walking towards his vehicle and only one or two steps away from his vehicle when struck by another vehicle was not "'occupying' – 'in, on, getting into or out of' – his vehicle at the time of the accident[,]" *Mims*, 2021 WL 2391382, at *3, *aff'd by Mims*, 2023 WL 2583689.  The district court distinguished between "getting to" the vehicle and "getting into" the vehicle, noting that "[w]hile the policy cover[ed] 'getting into or out of' a vehicle, it [did] not cover 'getting to' or approaching the vehicle."  *Id.*  While Mangieri walked away from his vehicle, unlike the insured in *Mims* who walked towards his vehicle, Mangieri was likewise some distance—approximately 19 to 20 steps—from his vehicle when the accident occurred.  ECF No. 21 at 2; 22 at 1.  If being one or two steps away from a vehicle did not constitute "getting into" a vehicle in *Mims*, in the present case, 19 to 20 steps from a vehicle is not "getting off" the vehicle.  At some point, "getting off" a vehicle must conclude, and the Court finds that walking

---

subject to multiple interpretations.  However, this does constitute a genuine issue of material fact.

12

towards a gas station storefront approximately 19 to 20 steps, even with the gas nozzle left in the vehicle's gas tank and the vehicle not yet gassed, is sufficiently disconnected from the vehicle for the purpose of "occupying" the vehicle.[4]  Accordingly, Defendant Estate is not allowed to stack coverage under the terms of the Policy.[5]  In addition, the Court denies Defendant Estate's Request for Certification to the Supreme Court of South Carolina regarding the question of "occupying" because existing state law is sufficient to resolve the issue.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment [21] is **GRANTED**, Defendant Estate's Request for Certification [22] is **DENIED**, and Defendant Estate's Motion to Supplement [28] is **DENIED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

January 30, 2024

---

[4] The Court also finds that the above facts, i.e., Mangieri was some distance from this vehicle when the accident occurred and walking towards the gas station storefront, fail to support Defendant Estate's argument that Mangieri was "using" or "maintaining" his vehicle when the accident occurred.  ECF No. 22 at 11.  If the Court accepted Defendant Estate's position, an individual who walks several miles away from his or her stranded vehicle in an attempt to fill a gas can and is then struck by another vehicle, would also be "using" or "maintaining" the vehicle when the accident occurred.  The Court finds the situation in this hypothetical illustrative of the folly of being drawn into a "how far is too far" analysis.

[5] To the extent that Defendant Estate argues that *Kennedy* is applicable to the present case, the court in *Kennedy* agreed with the trial court in determining that the insured's employee established contact with the insured's vehicle immediately prior to the accident occurring.  *Kennedy*, 730 S.E.2d at 868.  *Kennedy* is distinguishable from the present case in that the insured's employee only removed himself from the vehicle in question to avoid a collision, unlike Mangieri who willingly departed from his vehicle to fuel it and subsequently removed himself even further away for an unknown reason.  *Id.*; ECF No. 21 at 2.  There is no evidence of such an exigent circumstance in this action.

Spartanburg, South Carolina